X FILED ___ LODGED
___ RECEIVED ___ COPY
MAY 01 2025
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_______ DEPUTY

Timothy Clarke Johnston (Pro Se)
14650 MT Hwy 35
Bigfork, MT 59911
Phone: +1 480-408-8477
Email: tim@1stmilecapital.com

## UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA

| | |
|---|---|
| TIMOTHY CLARKE JOHNSTON<br><br>Plaintiff,<br><br>vs.<br><br>Last Mile Capital Partners, LLC, a Texas-based firm owned by Zach Wagner, an individual; Scottsdale Assisted Living, LLC, an Arizona limited liability company; AZSL 96TH, LLC, an Arizona limited liability company; AZ Senior Living, LLC, an Arizona limited liability company; Physicians Senior Living Fund, LLC, an Arizona limited liability company; MD Senior Living, LLC, an Arizona limited liability company; 1st Mile Management, LLC, an Arizona limited liability company; AZSL 19TH 1, LLC, an Arizona limited | Case No.: CV25-01472-PHX-SHD<br><br>COMPLAINT |

liability company; AZSL 19TH 2, LLC, an Arizona limited liability company; Chateaux Arcadia, LLC (dba Chateau Senior Living), an Arizona limited liability company; Jeffrey Giedt, an individual; Sendhil Krishnan, an individual,

DEFENDANT

Plaintiff Timothy Clarke Johnston ("Plaintiff"), appearing pro se, respectfully files this Complaint against the above-named Defendants for violations of federal securities laws, whistleblower retaliation, breach of fiduciary duties, and related causes of action, and alleges as follows:

The allegations that follow occurred primarily after Plaintiff was wrongfully removed from his position as manager under false pretenses. Following Plaintiff's removal, Defendants Sendhil Krishnan and Jeffrey Giedt assumed interim control of the fund and its affiliated entities and, without confirmed approval by the required ownership vote, installed Last Mile Capital Partners, LLC—a Texas-based firm owned by Zach Wagner—as acting manager. The actions taken by Last Mile Capital Partners and its principals constitute further violations of federal securities regulations and contributed to the harm suffered by Plaintiff and the fund's stakeholders.

Plaintiff was presented with a photocopied document purporting to show his removal as manager of AZ Senior Living and 1st Mile Management, allegedly signed by a minority shareholder who Plaintiff believes would never have knowingly voted against him. Upon information and belief, this shareholder was either coerced or misled based on false allegations that Plaintiff had misappropriated funds—allegations that Plaintiff can disprove. It remains unclear whether Defendants obtained the 70% ownership threshold required to legally remove Plaintiff from his management roles, and Plaintiff is not aware of any proper vote having been held. Furthermore, Plaintiff had a valid employment contract with 1st Mile Management and had begun the process of transitioning the fund's manager to that entity—efforts that were interrupted when he was removed under false pretenses. At the time of his removal, Plaintiff remained the recorded manager of Physicians Senior Living Fund and had full authority under the governing documents.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of federal securities laws including 15 U.S.C. § 77q(a), 17 C.F.R. § 230.506(c), and 15 U.S.C. § 78u-6(h).
2. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants conduct substantial business in Maricopa County, Arizona, and all actions giving rise to the claims occurred in this District.

## II. PARTIES

3. Plaintiff Timothy Clarke Johnston is the founder and Manager of AZ Senior Living, Physicians Senior Living Fund, and 1st Mile Management. He currently resides overseas and is filing this Complaint pro se.
4. Defendant Scottsdale Assisted Living, LLC is an Arizona limited liability company involved in fund operations and SBA-backed financing.
5. Defendant AZSL 96TH, LLC is an Arizona limited liability company that owns the real estate assets related to Scottsdale Assisted Living.
6. Defendant AZ Senior Living, LLC (AZSL) is the sponsor company of the fund structure.
7. Defendant Physicians Senior Living Fund, LLC (PSLF) is a Reg D 506(c) investment vehicle formed to raise investor capital.
8. Defendant 1st Mile Management, LLC was designated as **manager** with operational authority.
9. Defendant MD Senior Living, LLC (MDSL) is an Arizona company operated by Giedt and Krishnan, responsible for management of care home operations.
10. Defendant AZSL 19TH 1, LLC is an Arizona LLC formed to hold operating assets acquired by the fund.
11. Defendant AZSL 19TH 2, LLC is a sister entity to 19TH 1, structured for portfolio operations.
12. Defendant Châteaux Arcadia, LLC (dba Château Senior Living) is an Arizona LLC and part of the care home asset network.

13. Defendant Jeffrey Giedt is an Arizona resident, Manager / Member in MD Senior Living, and was a controlling party in PSLF and AZSL.

14. Defendant Sendhil Krishnan is an Arizona resident, Manager / Member of MD Senior Living, and acted to obstruct Plaintiff's audit attempts.

15. Defendant Last Mile Capital Partners, LLC is a Texas-based firm owned by Zach Wagner, who was installed by Defendants Sendhil Krishnan and Jeffrey Giedt as the new manager of the fund and affiliated entities following Plaintiff's removal. Upon information and belief, this transition was made without a formal ownership vote or compliance with governing procedures. Since assuming control in or around April 2023, Wagner has failed to provide Plaintiff with any regular investor or manager communications required under Reg D 506(c), which Plaintiff believes was done intentionally at the direction of other Defendants.

## III. FACTUAL BACKGROUND

16. Plaintiff personally structured the financial framework, banking relationships, and investor documentation for AZSL and PSLF. He managed all financial operations and negotiated SBA and bank loans under highly favorable terms.

17. In Q3–Q4 2022, while preparing an investment deck for additional capital formation, Plaintiff discovered substantial financial mismanagement, fraud, and theft at the sub-company level, resulting in unexpected and concealed financial losses.

18. Plaintiff requested an immediate third-party forensic audit, which Defendants initially agreed to but later obstructed and canceled without cause. Immediately after canceling the audit, Defendants wrongfully removed Plaintiff to prevent further financial investigations.

19. Plaintiff uncovered Medicaid (ALTCS) fraud involving misappropriated Medicaid payments, employee theft of labor and materials, and unauthorized cash transactions accepted by MDSL employee Janice Swanner. Defendants concealed this fraud and continued to employ Janice despite her history of narcotics theft and fraudulent activities.

20. Plaintiff repeatedly requested accurate financial disclosures, CPA audits, and forensic accounting but was met with obstruction by Defendants.

21. Defendants selectively disclosed financial records to certain investors while withholding them from Plaintiff, violating SEC Regulation D, Rule 506(c).

22. Plaintiff's legitimate business expenses, management salary, and travel costs were later misrepresented in Defendants' false counterclaims, despite Plaintiff having sole discretionary authority over company financials.

23. Beginning in Q3 and continuing through Q4 of 2022, Plaintiff—acting as the sole Manager of AZ Senior Living, Physicians Senior Living Fund, and 1st Mile Management—identified material discrepancies in internal operational and financial reports provided by MD Senior Living ("MDSL"). MDSL, owned and operated by Defendants Sendhil Krishnan and Jeffrey Giedt, functioned as the de

facto management company overseeing day-to-day operations at multiple residential assisted living facilities funded by the Physicians Senior Living Fund. Though Plaintiff had no ownership in MDSL, its operational role was authorized by oral agreement under Plaintiff's sole managerial authority. MDSL retained full access to facility-level bank accounts, staff, vendors, and internal bookkeeping systems.

24. By late 2022, Plaintiff discovered that nearly all internal financial reports from MDSL were inaccurate. These internal reports were intended to be consolidated by Plaintiff into official investor updates, as required under SEC Regulation D (506(c)). Once Plaintiff realized the data was materially false, he refused to issue any shareholder communications based on inaccurate figures and began demanding corrective action. This included the removal of MDSL's senior manager, Janice Swanner, who had been flagged by Plaintiff at least ten times due to poor performance and failure to communicate critical issues. It was later discovered that Swanner had been stealing from the fund and, specifically, from the AZSL 96TH facility. Despite these discoveries, Defendants Krishnan and Giedt continued to protect Swanner and block her removal.

25. In addition to the falsified reports, Plaintiff received direct internal whistleblower disclosures from Brian Newton, an employee inside MDSL who provided firsthand accounts of theft, misuse of company credit cards, and cash payments being diverted by MDSL staff. Newton informed Plaintiff that Janice Swanner was

personally collecting cash payments from at least one resident—her own brother—and keeping the funds for herself. Swanner resided in Tennessee, while her brother was located in Arizona, and the cash was being pocketed outside of all official accounting systems. Plaintiff independently confirmed this information through a witness and received further corroboration from Newton during a company Christmas party in Q4 2022. These payments were made to fund-owned facilities, not to MDSL-owned properties, and thus constituted direct theft from the investor-funded entities. Critically, Defendants Krishnan and Giedt were aware of this conduct months before Plaintiff discovered it and took no action to report, disclose, or stop it. Plaintiff and Newton later met with the Chief Detective of the Scottsdale Police Department's Economic Crimes Bureau and made a formal criminal complaint regarding the theft, which remains under review.

26. In Q1 2023, after these issues were uncovered, Plaintiff was approached on at least three occasions by individuals affiliated with MDSL and pressured to "sweep it under the rug" and "play it down" in the forthcoming shareholder report. Plaintiff refused, stating unequivocally that he would not mislead investors under any circumstances and reaffirmed his duty to protect shareholder interests. As a temporary compromise, Plaintiff delayed the report and immediately began implementing an action plan, including an internal audit led by bookkeeper David Liston. That internal audit was repeatedly delayed and obstructed by MDSL and

took nearly two months to complete. Upon conclusion, it revealed substantial irregularities, including missing Medicaid (ALTCS) payments.

27. Outraged by the findings, Plaintiff demanded an external forensic audit, which Defendants initially agreed to. Plaintiff identified and secured a qualified forensic auditor and circulated the proposed engagement and audit scope to the members. However, shortly thereafter—while Plaintiff was traveling internationally to visit his family—he was removed from his role without proper notice. The removal occurred while Plaintiff was in transit, without opportunity to defend against the allegations or complete the audit process.

28. At the time of his removal, Plaintiff had finalized a detailed crisis management plan, which included steps to correct the financial and operational breakdown. One key recommendation was the immediate replacement of Swanner and potentially Giedt with a highly qualified candidate Plaintiff had identified in the market. Although Plaintiff had no authority to directly remove MDSL, he had begun planning the replacement of MDSL as an operator entirely by installing a new management structure under the Physicians Senior Living Fund.

29. Plaintiff had also opened discussions with a larger, more experienced operator, Paul Bambach, who oversaw 21 facilities in the Phoenix area. Bambach briefly assumed operational control of the 96TH Street facility in Q1 2023 and found that MDSL had sabotaged operations. The facility, which had been at full occupancy (10 residents) in Q4 2022, had been reduced to only one resident by January 2023.

Several residents had been quietly transferred to unrelated facilities owned by MDSL, which was not part of the Physicians Senior Living Fund, despite the fund having paid referral fees and first-month rent for those residents.

30. Plaintiff was actively working to rebuild the occupancy and stabilize operations at the 96TH Street facility, which was personally guaranteed by Plaintiff under a $2 million SBA-backed loan. The sabotage, resident transfers, and refusal to cooperate with recovery efforts appeared to be driven by Defendants' concern for their own reputations—particularly Krishnan's, given that many of the fund's investors were physicians.

31. The state court case was procedurally manipulated by Defendants through improper service and selective document disclosures, further justifying federal intervention and oversight.

## IV. CAUSES OF ACTION

### Count I – Violation of SEC Rule 506(c) (17 C.F.R. § 230.506(c))

32. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

33. Defendants conducted a securities offering pursuant to SEC Regulation D, Rule 506(c), which allows general solicitation of accredited investors provided they meet disclosure, verification, and compliance requirements.

34. As part of this offering, Defendants certified that all investors were accredited and made material representations regarding the financial health, operations, and

management structure of the Physicians Senior Living Fund and its affiliated entities.

35. During the offering period, Defendants selectively disclosed financial information to certain investors while withholding it from Plaintiff and others, in violation of Rule 506(c)'s mandatory disclosure requirements.

36. Defendants also made false or misleading statements concerning the use of investor proceeds, the performance of sub-entities, and the managerial status of Plaintiff, especially following his disputed removal.

37. These misrepresentations and omissions subjected Plaintiff to regulatory exposure and reputational harm, as he remained listed as Manager and signatory on multiple offering and operational documents.

38. Defendants' conduct constitutes a material violation of Rule 506(c) and other provisions of the Securities Act of 1933, and directly contributed to harm suffered by Plaintiff and the Fund's stakeholders.

**Count II – Whistleblower Retaliation under the Dodd-Frank Act (15 U.S.C. § 78u-6(h))**

39. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

40. Plaintiff engaged in protected activity under the Dodd-Frank Act by initiating and demanding a forensic audit, uncovering misappropriation of funds and Medicaid fraud.

41. Defendants took adverse action against Plaintiff, including his wrongful removal and reputational damage, in retaliation for protected disclosures.

42. These actions constitute unlawful retaliation under 15 U.S.C. § 78u-6(h)..

---

**Count III – Breach of Fiduciary Duty**

43. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

44. Plaintiff, as the Manager of the Physicians Senior Living Fund and affiliated sponsor entities, owed fiduciary duties to the fund's investors and stakeholders and operated in reliance on reciprocal duties of care and good faith from Defendants Giedt, Krishnan, and affiliated entities acting as operational agents.

45. Defendants breached their fiduciary duties by obstructing internal and external audits, concealing theft by senior staff, diverting residents from fund-owned properties to unrelated entities they personally owned, and submitting false financial reports to Plaintiff in his capacity as Manager. These actions were taken knowingly and in violation of their obligations to act in the best interests of the fund and its investors.

46. Defendants also failed to act upon repeated reports of theft and mismanagement by Janice Swanner, who was retained despite clear evidence of criminal activity. Their protection of Swanner and sabotage of recovery efforts at the AZSL 96TH facility—an asset personally guaranteed by Plaintiff—constitutes gross misconduct and a breach of loyalty, care, and transparency.

**Count IV – Common Law Fraud**

47. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

48. Defendants knowingly and repeatedly misrepresented the financial condition of the fund's operating companies by delivering false internal financial reports to Plaintiff, who was responsible for preparing investor communications. These misrepresentations were material, deliberate, and made with the intent that Plaintiff would rely on them.

49. In addition, Defendants concealed material facts—including confirmed theft by MD Senior Living staff, missing Medicaid payments, and diversion of residents from fund-owned assets to personally controlled entities. Plaintiff discovered this misconduct only after being denied access to accurate records for an extended period.

50. Defendants further attempted to pressure Plaintiff into submitting a false investor report, and when he refused, they retaliated by obstructing the audit process and removing him from his position while he was overseas. These acts were

committed to suppress the truth and prevent disclosure of wrongdoing to investors and authorities.

51. Plaintiff reasonably relied on the false and incomplete reports during his tenure and suffered significant financial loss, reputational harm, and legal exposure as a direct result.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against all Defendants as follows:

52. Compensatory damages in the amount of $3,937,162, representing lost income, guaranteed debt exposure, legal fees, and out-of-pocket costs caused by Defendants' misconduct;

53. Punitive damages for fraud, bad faith, and malicious interference with Plaintiff's rights, professional standing, and regulatory compliance obligations;

54. Declaratory relief confirming Plaintiff's right to access fund financials, internal audit records, and indemnification protections associated with his role as Manager and signatory on fund-related documents;

55. Equitable and injunctive relief preventing Defendants from using selectively withheld information, false claims, or altered records in state court proceedings, investor communications, or regulatory filings;

56. Any further relief the Court deems just and proper.

Dated this 24th day of April, 2025.

Respectfully submitted,

/s/ Timothy Clarke Johnston

Timothy Clarke Johnston Pro Se Plaintiff