**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Timothy Clarke Johnston,<br>Plaintiff,<br>v.<br>Last Mile Capital Partners LLC, et al.,<br>Defendants. | No. CV-25-01472-PHX-SHD<br>**ORDER** |

Pending are pro se Plaintiff Timothy Clarke Johnston's motion to amend his Second Amended Complaint ("SAC"), (Doc. 39), and Defendants' motion to dismiss the SAC, (Doc. 40). Both motions are fully briefed. (Docs. 50, 52, 53, 58.) For the reasons stated below, the motion to dismiss is **granted**, and the motion for leave to amend is **denied**.[1]

## I. BACKGROUND

In 2023, Johnston was removed from his position as manager of Defendants AZ Senior Living, LLC, ("AZ Senior Living"), Physicians Senior Living Fund ("PSLF"), and 1st Mile Management LLC ("1st Mile"), all of which are involved in the ownership and management of several assisted living facilities in Arizona.[2] (*See* Doc. 21 at 2–4.) Johnston alleges that his removal was "based on false allegations that [he] had

---

[1] I find these motions suitable for decision without oral argument. *See* LRCiv 7.2(f).

[2] It is unclear whether Johnston was a designated manager of a manager-managed LLC, or whether he uses the term manager to refer generally to his role in a member-managed LLC.

misappropriated funds"; was obtained by either coercing or misleading at least one shareholder; and was orchestrated by Defendants Sendhil Krishnan and Jeffery Giedt, who operate Defendant MD Senior Living LLC ("MDSL"), the "de facto management company" for the day-to-day operations at the assisted living facilities. (*Id.* at 3; *id.* at ¶¶ 9, 23.) Upon Johnston's removal, Krishnan and Giedt "assumed interim control of the fund[3] and its affiliated entities" and "installed [Defendant] Last Mile Capital Partners, LLC as acting manager."[4] (*Id.* at 2.)

Johnston alleges that he "personally structured the financial framework, banking relationships, and investor documentation for AZ Senior Living and PSLF." (*Id.* at ¶ 16.) In 2022, he discovered "substantial financial mismanagement, fraud, and theft at the sub-company level." (*Id.* at ¶ 17.) This included "Medicaid (ALTCS) fraud involving misappropriated Medicaid payments, employee theft of labor and materials, and unauthorized cash transactions" by MDSL employee Janice S.[5] (*Id.* at ¶ 19.) Johnston alleges that Defendants concealed Janice S.'s fraud and continued to employ her. (*Id.*) This concealment included "selectively disclos[ing] financial records to certain investors while withholding them from" Johnston. (*Id.* at ¶ 21.)

Johnston also discovered "material discrepancies in internal operational and financial reports provided by" MDSL. (*Id.* at ¶ 23.) By late 2022, he concluded that "nearly all internal financial reports from MDSL were inaccurate." (*Id.* at ¶ 24.) Although Johnston was expected to consolidate these reports "into official investor updates," "he refused to issue any shareholder communication based on inaccurate figures and began

---

[3] Johnston refers to "the fund" throughout his SAC, but it is not clear what "fund" he is referring to. (*See, e.g.*, Doc. 21 at ¶¶ 6, 10, 15.)

[4] Johnston also names four Defendants—AZSL 96th LLC, AZSL 19th LLC, AZSL 19th 2 LLC, and Chateaux Arcadia LLC—that do not feature prominently in his allegations, but that own real estate or other assets associated with the senior living facilities. (Doc. 21 at ¶¶ 5, 10–12.)

[5] I refer to non-party individuals by their first name and last initial to protect their privacy.

demanding corrective action." (*Id.*) Around this time, another MDSL employee, Brian N. reported to Johnston that Janice S. was "personally collecting cash payments from at least one resident—her own brother—and keeping the funds for herself." (*Id.* at ¶ 25.) Johnston reported Janice S.'s theft to the Scottsdale Police Department's Economic Crimes Bureau. (*Id.*)

In early 2023, several MDSL employees approached Johnston and pressured him to "sweep it under the rug" and "play it down" in the upcoming shareholder report. (*Id.* at ¶ 26.) Again, Johnston refused to "mislead investors under any circumstances." (*Id.*) "As a temporary compromise," however, Johnston "delayed the report and immediately began implementing an action plan, including an internal audit." (*Id.* at ¶ 26.) MDSL "repeatedly delayed and obstructed" the internal audit, which took "nearly two months to complete." (*Id.*) The internal audit revealed "substantial irregularities, including missing Medicaid (ALTCS) payments." (*Id.*)

Following this discovery, Johnston "demanded an external forensic audit." (*Id* at ¶ 27.) Although "Defendants initially agreed" to the audit, they "later obstructed and canceled [it] without cause." (*Id.* at ¶¶ 18, 27.) "Immediately after" the audit was cancelled, Johnston was removed from his position as manager "to prevent further financial investigations." (*Id.*)

Johnston alleges two federal causes of action. First, he alleges that Defendants violated SEC Rule 506(c), codified at 17 C.F.R. § 230.506(c), when they "made an offering" pursuant to that regulation; made "material misrepresentations" about the financial health of the relevant entities; "selectively disclosed" financial information to some investors, but not all; and made "false and misleading statements concerning the use of investor proceeds, the performance of sub-entities" and Johnston's "managerial status." (*Id.* at 10–11.)

His second federal claim is a whistleblower retaliation claim brought under 15 U.S.C. § 78u-6(h). Here, Johnston alleges that he "engaged in a protected activity . . . by initiating and demanding a forensic audit, [and] uncovering misappropriation of funds and

Medicaid fraud," and that Defendants retaliated against these "protected disclosures" by removing him from his position as manager. (*Id.* at ¶¶ 40–41.) Johnston also asserts two Arizona state law claims for breach of fiduciary duty and fraud.

Johnston filed his original complaint on May 1, 2025.[6] (Doc. 1.) On July 31, 2025, he filed a First Amended Complaint ("FAC") as of right under Federal Rule of Civil Procedure 15(a). (Doc. 12.) He then moved to file a Second Amended Complaint ("SAC") on August 13, 2025, (Doc. 19), and I granted him leave to do so, (Doc. 20). On October 6, 2025, Johnston sought leave to file a Third Amended Complaint ("TAC"). (Doc. 39.) Four days later, on October 10, 2025, Defendants moved to dismiss Johnston's SAC. (Doc. 40.) On October 16, 2025, Johnston filed a Supplement to his motion to amend, which included an updated proposed TAC. (Doc. 51.)

Both the motion to dismiss Johnston's SAC and Johnston's motion to amend are fully briefed. (Docs. 50, 52, 53, 58.) Defendants argue that Johnston's SAC fails to state a federal claim, and that, absent a viable federal claim, I should decline to exercise supplemental jurisdiction over Johnston's state law claims. (Doc. 40 at 7–12.) They further assert that Johnston's proposed TAC suffers from the same defects as the SAC, and his motion to amend should therefore be denied as futile. (Doc. 52 at 3–6.)

## II. MOTION TO DISMISS

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

---

[6] Defendants note that Johnston has filed a parallel action in Maricopa County Superior Court arising from the same underlying events, *Johnston v. Last Mile Capital Partners, LLC, et al.*, No. CV2024-016101. (Doc. 40 at 3–6.) There, the Superior Court dismissed Johnston's fraud claim and, after he failed to respond to Defendants' counterclaims, entered a default judgment against him. While I take judicial notice of the existence of that action, I do not rely on it to resolve the pending motions. *See Five Points Hotel P'ship v. Pinsonneault*, 835 F. Supp. 2d 753, 757 (D. Ariz. 2011) (taking judicial notice of an Arizona Court of Appeals decision "for the fact of its existence, the parties to the state case, and the result of the disposition, but not for the truth of the facts therein").

modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). A "well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable, and [] a recovery is very remote and unlikely." *Id.* at 556 (citation modified).

Pro se filings must be construed "liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014). Pro se complaints "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). "A liberal construction of a pro se complaint, however, does not mean that courts will supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

Because Johnston "alleges that Defendants fraudulently violated federal securities laws, [his] initial burden is heightened by the 'dual pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ('PSLRA'), 15 U.S.C. § 78u–4.'" *Ryan v. FIGS, Inc.*, 2025 WL 71727, at *3 (C.D. Cal. Jan. 10, 2025) (citation modified) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009)), *aff'd sub nom. Hoch v. Figs, Inc.*, 2026 WL 2322811 (9th Cir. Aug. 11, 2026).

> Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction." *Vess*, 317 F.3d at 1106. "The plaintiff must set forth what is false or

> misleading about a statement, and why it is false." *Id.*
>
> Securities fraud claims must also meet a higher pleading standard under the PSLRA. Specifically, a securities fraud plaintiff must plead "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000) (citing 15 U.S.C. § 78u-4(b)(1)). Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1)–(2)).

*Id.* (citation modified).

**B. Discussion**

**1. Rule 506(c)**

Johnston's first claim is asserted under Rule 506(c), codified at 17 C.F.R. § 230.506(c). That rule provides an exemption to the registration requirements of the Securities Act of 1933 (the "Securities Act") for "transactions not involving any public offering." 17 C.F.R. § 230.506(c). And while a qualifying transaction under Rule 506(c) is not "exempt from the antifraud, civil liability, or other provisions of the federal securities laws," *id.* § 230.500, the regulation itself does not provide a private right of action. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). "Thus, for parties to invoke a right of action through a regulation, they must attach the regulation to a statute that does create a private right of action." *Huffman v. JP Morgan Chase Bank, NA*, 2023 WL 2691455, at *7 (D. Ariz. March 29, 2023).

Johnston does not attach his invocation of Rule 506(c) to a statute that creates a private right of action. Rule 506(c) derives from Section 4 of the Securities Act, which, like Rule 506(c) defines and addresses "exempted transactions," but does not provide a private right of action. *See* 15 U.S.C. § 77d. In passing, Johnston mentions Section 17(a) of the Securities Act, codified at 15 U.S.C. § 77q(a), which prohibits fraudulent securities transactions. (Doc. 21 at ¶ 1 (citing 15 U.S.C. § 77q(a) as grounds for federal jurisdiction).) But this provision does not provide a private right of action. *See e.g.*, *In re Washington*

*Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987).

I am not aware of any private right of action under federal securities laws that would allow Johnston to pursue a claim based on Rule 506(c). The Securities Act provides a private right of action under three provisions: Section 12(a)(1), Section 12(a)(2), and Section 11. None apply here. Section 12(a)(1) "imposes liability on any person who offers or sells a non-exempt security without registering it." *Arimilli v. Rezendes*, 2025 WL 764006, at *7 (D. Ariz. March 11, 2025). That provision cannot provide Johnston with a private right of action because it applies to non-exempt securities that must be registered, and Johnston alleges that the transactions at issue *were* exempted under Rule 506(c). (*See, e.g.*, Doc. 21 at ¶¶ 7, 15, 21 (alleging that Defendant PSLF "is a Reg D 506(c) investment vehicle"; that Last Mile is owned by Zach Wagner who "failed to provide [Johnston] with any regular investor or manager communications required under Reg D 506(c)"; and that "Defendants selectively disclosed financial records to certain investors while withholding them from [Johnston], violating SEC Regulation D, Rule 506(c)")).

Sections 12(a)(2) "impose[s] strict liability for any untrue statement of a material fact or omission of a material fact in a . . . 'prospectus.'" *Pirani v. Slack Technologies*, 127 F.4th 1183, 1186 (9th Cir. 2025) (citation modified). That provision applies only to "public offerings." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 584 (1995) (holding that "the word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder"); *see also Crypto Asset Fund, LLC v. Hoard, Inc.*, 2020 WL 13556128, at *5 (S.D. Cal. June 19, 2020) (holding that Section 12(a)(2) "is limited to public offerings"). Rule 506 transactions are not "public offerings." 17 C.F.R. § 230.506(a) ("Offers and sales of securities by an issuer that satisfy the conditions in . . . this section shall be deemed to be transactions not involving any public offering."). Accordingly, Section 12(a)(2) cannot fit the facts alleged.

And Section 11, which addresses false or misleading "registration statement[s]," *see Pirani*, 127 F.4th at 1186, is also inapplicable. Transactions that are exempt from registration do not need a registration statement and Johnston alleges no such statement

here. *See Vicioso v. Watson*, 325 F. Supp. 1071, 1078 (C.D. Cal. 1971) ("Under federal law, securities transactions which do not involve a public offering are exempt from the registration statement requirement."); *see also S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010) ("[T]he Securities Act make[s] it unlawful to offer or sell a security . . . if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration.").

Further, "Section 11 gives a cause of action only to a 'person acquiring such security,' while section 12(a)(2) similarly gives a cause of action only 'to the person purchasing such security.'" *Pirani*, 127 F.4th at 1186 (citation modified). Johnston's SAC is devoid of any allegation that he purchased or acquired a security.[7] (*See generally* Doc. 21.) Thus, to the extent that Johnston argues that he may pursue a claim based on Defendants' alleged violation of Rule 506(c) under Sections 11, 12(a)(1) or 12(a)(2), he is mistaken.

Although Johnson did not cite Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, Defendants raise it as a possible vehicle for Johnston's claim. (Doc. 40 at 8–9.) The elements of a § 78j(b) claim are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).

Johnston's SAC does not meet the heightened pleading standard required for claims alleging fraudulent violations of federal securities laws under § 78j(b). It is difficult to discern a coherent narrative from Johnston's SAC, let alone identify "the who, what, when,

---

[7] In his Sur-Reply, Johnston attempts to remedy this issue with allegations that he has, or had, an ownership interest in the entities at issue. (*See* Doc. 58 at 2–5 (attesting that Johnston had certain ownership interests in Defendants AZ Senior Living and PSLF).) These allegations miss the mark—he must allege that he purchased or acquired a security pursuant to an offer that violated Section 11 or 12(a)(2).

where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106. As Defendants point out, Johnston consistently conflates the Defendants—of which there are 12—so it is impossible to determine which Defendant is alleged to have performed which act. *See Gibson v. City of Portland*, 165 F.4th 1265, 1292 (9th Cir. 2026) (emphasizing that plaintiffs have a "duty to identify who is responsible" for wrongs alleged, and grouping defendants collectively, without specifying which defendants did what, renders a complaint deficient under Rule 8). And Johnston's allegations regarding misinformation provided to investors are vague and conclusory; they do not satisfy the PSLRA's requirement that a plaintiff allege "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Ryan*, 2025 WL 71727 at *3.

In short, Johnston's first count does not state a claim. It is unclear which federal securities cause of action Johnston intends to bring with his invocation of Rule 506(c), and he has failed to allege sufficient facts to support any of the private rights of action available to him.

**2. Whistleblower Claim**

To bring a claim under 15 U.S.C. § 78u–6, which provides a private right of action if an employer retaliates against a whistleblower, a plaintiff must allege that they provided information relating to a violation of the securities laws to the Securities Exchange Commission. *Digit. Realty Trust, Inc. v. Somers*, 583 U.S. 149, 163 (2018) (holding that a plaintiff must make a report to the SEC to qualify as a "whistleblower" under § 78u–6). Johnston alleges only that he "initiat[ed] and demand[ed] a forensic audit" and "uncover[ed] misappropriation of funds and Medicaid fraud." (Doc. 21 at ¶ 40.) He does not allege that he reported anything to the SEC.[8] (*See id.*) He therefore fails to state a claim under 15 U.S.C. § 78u–6.

[8] Johnston's allegation that he reported Janice S.'s theft to the Scottsdale Police Department also cannot support this claim because the report was not made to the SEC. *See Digit. Realty*, 583 U.S. at 163.

### 3. State Law Claims

Under 28 U.S.C. § 1367(a), district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Courts may decline to exercise supplemental jurisdiction, however, if "all claims over which [they have] original jurisdiction" are dismissed. *Id.* § 1367(c)(3). "When the single federal-law claim in the action [is] eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) *superseded by statute on other grounds as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000); *see also Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("It is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court.").

This case is at an early stage. The parties have filed one round of motions to dismiss but have not engaged in discovery or any other motions practice. As a result, retaining this case "in federal court would not meaningfully advance the values of economy, convenience, or fairness." *Garcia v. Orion Plastics Corp.*, 2016 WL 2904853, at *4 (C.D. Cal. May 18, 2016). I am reluctant to exercise supplemental jurisdiction over Johnston's state law claims unless and until Johnston can adequately allege federal claims. Because I grant Johnston leave to amend his federal claims, (*see infra*, Section III), I will reserve addressing his state law claims.

## III. LEAVE TO AMEND

Rule 15 provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As the term "freely" suggests, this "policy is to be applied with extreme liberality." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (citation omitted). "Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile." *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) (citation

omitted). District courts have "discretion to deny leave to amend when there are countervailing considerations such as undue delay, prejudice, [or] bad faith." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (quotation marks omitted).

Defendants argue that Johnston's Motion to Amend, (Doc. 39), should be denied because Johnston's proposed TAC cures none of the defects identified in the motion to dismiss and amendment would therefore be futile. (*See generally* Doc. 52.) Defendants are correct. Although Johnston's TAC adds many factual allegations regarding alleged misconduct by Defendants and their employees, it does nothing to cure the foundational issues identified above. The proposed TAC adds a series of new allegations regarding misconduct by Defendants, including that "ALTCS reimbursements were misrouted and withheld by insiders in amounts no less than $125,000 . . . with [Janice S.] gatekeeping access"; that certain unpaid loan amounts remain outstanding; that no written management agreements existed between any of the entities at issue; a "secret dilution of [Johnston's] ownership"; that Johnston's requests for records were denied; that "cross entity transfers to non fund entities" occurred; and various other opaque and confusing assertions. (*See, e.g.*, Doc. 51-1 at ¶¶ 38–56.)

Despite these new factual allegations, the two federal counts remain essentially verbatim from the SAC. (*Compare* Doc. 51-1 at ¶¶ 60–70 *with* Doc. 21 at ¶¶ 33–42.) Count I again rests on alleged violations of Rule 506(c) and again fails to allege that Johnston purchased any securities, insisting only that Defendants' "false or misleading statements" "subjected [Johnston] to regulatory exposure and reputational harm" because he was "listed as Manager and signatory on multiple offering and operational documents." (Doc. 51-1 at ¶¶ 63–64.) Count II again defines Johnston's protected activity as "initiating and demanding a forensic audit," with no allegation that he reported any violation to the SEC. (*Id.* at ¶ 68.) Indeed, many of the new allegations in the TAC exacerbate the issues identified above, indicating that Johnston was not on the "purchaser" side of the transactions at issue, but was instead an issuer or offeror of securities. (*Id.* at ¶¶ 37–40, 52

(alleging that Johnston opened the fund's accounts under his Social Security number as "sole signatory of record," "reviewed and released" investor checks and wires, and could not "complete the planned capital raise").) Accordingly, Johnston's motion for leave to file his TAC will be denied.

The question remains, however, whether Johnston should be granted further leave to amend his federal claims now that he has the benefit of my ruling on Defendants' motion to dismiss. While Johnston has had prior opportunities to amend his complaint, he has not done so with the benefit of my analysis. Because leave should be given freely, and mindful of the liberal construction owed to pro se litigants, I will grant Johnston one final opportunity to amend his federal claims. Johnston is cautioned, however, that failure to cure the defects identified in this order will result in dismissal of his federal claims with prejudice and without further leave to amend, and will likely result in remand of the state law claims if I decline to exercise supplemental jurisdiction over them.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** denying Johnston's Second Motion to Amend/Correct Second Amended Complaint and Leave to File Third Amended Complaint, (Doc. 39).

**IT IS FURTHER ORDERED** granting Defendants' motion to dismiss, (Doc. 40), with leave to amend.

**IT IS FINALLY ORDERED** that any amended pleading shall be filed by no later than **September 8, 2026**.

Dated this 25th day of August, 2026.

Honorable Sharad H. Desai
United States District Judge